Case Nos. 12-56067, 12-56068, 12-56077 (Consolidated)

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ESTATE OF ROBERT GRAHAM, et al.,

*Plaintiffs and Appellants,*

vs.

SOTHEBY'S, INC.,

*Defendant and Appellee.*

THE SAM FRANCIS FOUNDATION, et al.,

*Plaintiffs and Appellants,*

vs.

CHRISTIE'S, INC.,

*Defendant and Appellee.*

THE SAM FRANCIS FOUNDATION, et al.,

*Plaintiffs and Appellants,*

vs.

EBAY, INC.,

*Defendant and Appellee.*

## APPELLANTS' OPENING BRIEF

Appeal From The United States District Court, Central District of
California, Case Nos. CV 11-8604 JHN (FFMx), CV 11-8605 JHN
(FFMx), CV11-8622 JHN (PLAx)
The Honorable Jacqueline H. Nguyen

BROWNE GEORGE ROSS LLP
Eric M. George (State Bar No. 166403)
Ira Bibbero (State Bar No. 217518)
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Tel: (310) 274-7100
Fax: (310) 275-5697

GREINES, MARTIN, STEIN
 & RICHLAND LLP
Irving H. Greines (State Bar No. 39649)
Gary D. Rowe (State Bar No. 165453)
5900 Wilshire Blvd., 12th Floor
Los Angeles, CA 90036
Tel: (310) 859-7811
Fax: (310) 276-5261

Attorneys for Plaintiffs and Appellants

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ 1

JURISDICTIONAL STATEMENT ...................................................................... 2

     A.     Basis for District Court's Subject-Matter Jurisdiction .......................... 2

     B.     Basis for Court of Appeal's Jurisdiction. ............................................. 2

     C.     Timeliness of Appeal. .......................................................................... 3

     D.     Finality of Judgment ............................................................................ 3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................... 3

STATEMENT OF THE CASE .............................................................................. 5

STATEMENT OF FACTS ..................................................................................... 7

     A.     The Act. ................................................................................................. 7

     B.     The Pertinent Allegations of the Complaints. ...................................... 9

            1.     The Actual Allegations of the Complaints. ................................ 9

            2.     If Necessary, the Complaints Could Readily Be Amended to Allege That Each Defendant Maintains An Extensive California Presence and Does Substantial Business in California. .............................................................. 11

     C.     The District Court's Ruling Dismissing the Complaints. ................... 13

SUMMARY OF ARGUMENT ........................................................................... 15

STANDARD OF REVIEW ................................................................................. 17

ARGUMENT ...................................................................................................... 18

I.     THE ACT IS CONSTITUTIONAL: IT COMPORTS FULLY WITH THE COMMERCE CLAUSE BECAUSE IT SEPARATELY AND INDEPENDENTLY SATISFIES TWO COMMERCE CLAUSE TESTS PROMULGATED BY THE SUPREME COURT ......................... 18

i

# TABLE OF CONTENTS
## (cont'd)

Page

A.    The Act Is Constitutional Under the Commerce Clause: It Passes the Supreme Court's "Bright-Line" Test That a State May Constitutionally Impose a Levy-Collection Burden on an Out-Of-State Seller So Long as the Seller Has a Physical Presence in or Nexus to the State Imposing the Levy. ....................... 18

     1.    The Bright-Line Rule. ................................................................ 18

     2.    The Supreme Court Cases That Led to (and Define the Boundaries of) *Quill's* "Bright-Line" Rule. ............................. 20

         a.    The Most Recent Pre-*Quill* Case: *National Geographic*. .................................................................... 21

         b.    The Other Pre-*Quill* Cases. ............................................ 22

     3.    The Act Unquestionably Passes Commerce Clause Scrutiny. ................................................................................... 25

B.    The Act Is Independently Constitutional Under the Four-Part Commerce Clause Test Promulgated by the Supreme Court in *Complete Auto*. ................................................................................ 27

     1.    The 5% Charge Imposed by the Act Applies to an Activity with a Substantial Nexus to California. ...................... 28

     2.    The Act Is Fairly Apportioned. ................................................. 31

         a.    The Levy Imposed By the Act Is Internally Consistent. ..................................................................... 32

         b.    The Levy Imposed By The Act is Externally Consistent. ..................................................................... 33

     3.    The Act Does Not Discriminate Against Interstate Commerce. .................................................................................. 35

     4.    The Act Is Fairly Related to the Services Provided by the State. ......................................................................................... 37

# TABLE OF CONTENTS
## (cont'd)

Page

II.  NONE OF THE REASONS ADVANCED BY THE DISTRICT
     COURT SUPPORTS ITS DETERMINATION THAT THE ACT
     VIOLATES THE COMMERCE CLAUSE. ................................... 39

     A.  Contrary to the District Court's Determination, the Act Does
         Not Directly Regulate Commerce Occurring Wholly Outside
         California. ........................................................ 39

     B.  The District Court's Reliance on *Healy* and *Brown-Forman* Is
         Misplaced. ........................................................ 41

     C.  The Hypothetical Posed by the District Court Is Inapposite: It
         Fails to Account for the Facts of This Case. ...................... 44

     D.  The Act Does Not Violate the Commerce Clause Because, If Its
         Requirements Are Honored, Its Economic Impact Falls
         Exclusively on California Transactions and California
         Residents. ........................................................ 45

III. THE DISTRICT COURT ERRED WHEN IT INVALIDATED THE
     ACT *IN TOTO*; THE DISTRICT COURT WAS OBLIGED TO
     ENFORCE THE ACT'S SEVERANCE PROVISION. ....................... 47

     A.  The Portions of the Act That Apply to Sales Occurring Within
         California Do Not Violate the Commerce Clause. .................. 49

     B.  The Act's Severance Provision Unequivocally Expresses
         Legislative Intent That Lawful Portions of the Act Must Be
         Upheld and, Thus, It Mandates That the Portions of the Act
         That Do Not Violate the Law Be Upheld. ......................... 49

     C.  The District Court's Holding Is Inconsistent with Supreme
         Court Precedents Mandating That a Statute's Severance
         Provision Must Be Honored. ...................................... 51

     D.  The Cases Relied on by the District Court Are Inapposite:
         They Do Not Support the Order Invalidating the Entire Act. ...... 54

# TABLE OF CONTENTS
## (cont'd)

Page

E.    In Addition to Being Contrary to Law, the District Court's Refusal to Give Effect to the Severance Provision Makes No Sense ................................................................................................. 55

IV.    CONCLUSION. .......................................................................... 57

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ..................................... 59

STATEMENT OF RELATED CASES ................................................................. 60

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alaska Airlines v. Brock*,
    480 U.S. 678 (1987) ........................................................................54

*Bauman v. DaimlerChrysler Corp.*,
    644 F.3d 909 (9th Cir. 2011) ........................................................31

*Brown-Forman Distillers Corp. v. New York State Liquor Auth.*,
    476 U.S. 573 (1986) ........................................................41, 42, 43

*Cahill v. Liberty Mut. Ins. Co.*,
    80 F.3d 336 (9th Cir. 1996) ..........................................................17

*California First Amendment Coalition v. Calderon*,
    150 F.3d 976 (9th Cir. 1998) ........................................................17

*Champlin Refining Co. v. Corporation Comm'n*,
    286 U.S. 210 (1932) ................................................................52, 53

*Complete Auto Transit, Inc. v. Brady*,
    430 U.S. 274 (1977) .............................................................. passim

*Exxon Corp. v. Governor of Maryland*,
    437 U.S. 117 (1978) ................................................................42, 47

*Felt & Tarrant Mfg. Co. v. Gallagher*,
    306 U.S. 62 (1938) ............................................................20, 23, 24

*Ford Motor Co. v. Beauchamp*,
    308 U.S. 331 (1939) ........................................................................49

*Goldberg v. Sweet*,
    488 U.S. 252 (1989) .............................................................. passim

*Gravquick A/S v. Trimble Navigation Intern. Ltd.*,
    323 F.3d 1219 (9th Cir. 2003) ......................................................40

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Healy v. Beer Inst.*,
    491 U.S. 324 (1989) ................................................................41, 42, 43, 46

*Immigration and Naturalization Serv. v. Chadha*,
    462 U.S. 919 (1983) ....................................................................52

*In re Cal Farm Supply Co.*,
    110 B.R. 461, 466 (Bankr. E.D. Cal. 1989) ..................................30

*Monamotor Oil v. Johnson*,
    292 U.S. 86 (1934) ..............................................20, 22, 23, 24

*Morseburg v. Baylon*,
    621 F.2d 972 (9th Cir. 1980) ........................................................8

*National Ass'n of Optometrists & Opticians v. Brown*,
    567 F.3d 521 (9th Cir. 2009) ......................................................46

*National Ass'n of Optometrists & Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012) .....................................................42

*National Bellas Hess, Inc. v. Illinois Rev. Dept.*,
    386 U.S. 753 (1967) ..........................................................21, 25, 38

*National Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633 (9th Cir. 1993) .......54, 55

*National Geographic Society v. California Board of Equalization*,
    420 U.S. 551 (1977) ........................................................... passim

*Nelson v. Sears, Roebuck & Co.*,
    312 U.S. 359 (1941) ........................................... 20, 23, 24, 29, 38

*Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*,
    514 U.S. 175 (1995) ..........................................................32, 33, 37

*Pacific Tel. & Tel. Co. v. Tax Commission*,
    297 U.S. 403 (1936) ....................................................................49

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Quill Corporation v. North Dakota,*
    504 U.S. 298 (1992) ............................................................................ passim

*Regan v. Time, Inc.,*
    468 U.S. 641 (1984) ....................................................................................54

*S.D. Myers, Inc. v. City and County of San Francisco,*
    253 F.3d 461 (9th Cir. 2001) ......................................................................40

*Scripto, Inc. v. Carson,*
    362 U.S. 207 (1960) ............................................................................ passim

*Singleton v. Wulff,*
    428 U.S. 106 (1976) ......................................................................................5

*South Ferry LP, No. 2 v. Killinger,*
    542 F.3d 776 (9th Cir. 2008) ......................................................................17

*Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.,*
    368 F.3d 1053 (9th Cir. 2004) ..............................................................11, 17

*United Haulers Ass'n , Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.,*
    550 U.S. 330 (2007) ..............................................................................35, 36

*Usher v. City of Los Angeles,*
    828 F.2d 556 (9th Cir. 1987) ......................................................................17

*Valley Bank of Nevada v. Plus System, Inc.,*
    914 F.2d 1186 (9th Cir. 1990) ..............................................................46, 47

*Veazie v. Williams,*
    49 U.S. 134 (1850) ......................................................................................30

## STATE CASES

*Korean Air Lines Co., Ltd. v. County of Los Angeles,*
    162 Cal.App.4th 552 (2008) ........................................................................31

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Maurillo v. Park Slope U-Haul,*
    194 A.D.2d 142, 146 (N.Y. App. Div. 1993)................................................31

## FEDERAL STATUTES

17 U.S. C.
    § 101 *et seq.*.........................................................................................4

28 U.S.C.
    § 1291 .....................................................................................................3
    § 1332(d)(2) ...........................................................................................2

U.S. Const. amend. V.....................................................................................4

U.S. Const. Art. I, § 8, cl. 3 .........................................................................3

## STATE STATUTES

California Business & Professions Code
    § 17200 *et seq.*....................................................................2, 5, 11

California Civil Code
    § 986 ............................................................................................2, 3, 7
    § 986(a)..................................................................................... passim
    § 986(a)(1) ............................................................................... passim
    § 986(a)(3) ..............................................................................8, 14, 29
    § 986(c)(2)........................................................................................7
    § 986(e)...................................................................8, 48, 50, 57
    § 2330 ............................................................................................30
    § 2362(1)........................................................................................30

California Government Code
    § 8750 ............................................................................................8

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

## RULES

Federal Rule of Appellate Procedure
  Rule 4(a)(1)(A) ...........................................................3

Federal Rules of Civil Procedure
  Rule 12(b)(6) ...............................................................5
  Rule 26 .........................................................................6
  Rule 26(f) .....................................................................6

## OTHER AUTHORITIES

Restatement (Third) Of Agency
  § 1.01 (2006) ..............................................................31

## CORPORATE DISCLOSURE STATEMENT

No appellant party to this appeal is a nongovernmental corporation;

therefore, there is no corporation for appellants to disclose pursuant to Fed. R.

App. P. 26.1.


DATED: February 28, 2013          Respectfully submitted,

                                  BROWNE GEORGE ROSS LLP
                                      Eric M. George
                                          egeorge@bgrfirm.com
                                      Ira Bibbero
                                          ibibbero@bgrfirm.com

                                  GREINES, MARTIN, STEIN
                                      & RICHLAND LLP
                                      Irving H. Greines
                                          igreines@gmsr.com
                                      Gary D. Rowe
                                          growe@gmsr.com



                                  By    /s/ Eric M. George
                                      _____
                                          Eric M. George

                                  Attorneys for Plaintiffs/Appellants

## JURISDICTIONAL STATEMENT

### A.    Basis for District Court's Subject-Matter Jurisdiction.

The complaints in the cases from which these consolidated appeals are taken assert claims on behalf of classes of plaintiffs against defendants Sotheby's, Inc. ("Sotheby's"), Christie's, Inc. ("Christie's") and eBay, Inc. ("eBay") for violations of California's Resale Royalties Act (Cal. Civ. Code § 986, the "Act") and Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*).  (7 EOR 001806-09; 8 EOR 001819-22, 001830-33.)[1]

In each case, the plaintiffs allege that the matter in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, and that there exist many class members who are citizens of a state different from defendants' states.  The district court, therefore, had diversity jurisdiction in each case pursuant to 28 U.S.C. § 1332(d)(2).

### B.    Basis for Court of Appeal's Jurisdiction.

On June 6, 2012, the district court entered judgment against the plaintiffs in each of the three cases.  (1 EOR 000001-6.)  No post-judgment motions were filed,

---

[1]    Citations to Plaintiffs' Excerpts of Record and to the Reporter's Transcript are given as "# EOR #####," where "#" is the volume number and "#####" is the page number.

other than motions on collateral matters such as for attorney's fees. Appellate jurisdiction therefore lies under 28 U.S.C. § 1291.

**C.     Timeliness of Appeal.**

Judgments were entered on June 6, 2012. (1 EOR 00001-6.) Plaintiff noticed these appeals on June 7, 2012. (1 EOR 000033, 000070, 000107.) Therefore, these appeals are timely under Federal Rule of Appellate Procedure 4(a)(1)(A).

**D.     Finality of Judgment.**

These appeals are from final judgments that dispose of all parties' claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

The issues presented for review are the following:

A.     *Does the California Resale Royalties Act (Cal. Civ. Code § 986, the "Act") violate the Commerce Clause of the United States Constitution, U.S. Const. Art. I, § 8, cl. 3 ("Commerce Clause")?*

As more particularly applied to this case, this central Commerce Clause inquiry breaks down into the following sub-issues:

1.     Whether the district court prejudicially erred in holding that the Act impermissibly requires that, when a work of original fine art (as defined in the Act) is sold in California or out of state by

a seller who resides in California, the seller or the seller's agent must pay the artist 5% of the sale proceeds.

2.    Whether the district court prejudicially erred in holding that the Act impermissibly requires that, when a work of original fine art is sold at auction in California or out of state by a seller who resides in California, the auctioneer, acting as the seller's agent, must withhold the 5% levy from the seller's sales proceeds and pay that sum to the artist.

3.    Whether the Act impermissibly requires an out of state corporate auction house that has a physical presence in California to be held liable for the 5% levy if it sells (as agent for a California seller) a work of original fine art, but fails to withhold the 5% levy and pay it to the artist as the Act requires.

B.    *Whether the district court prejudicially erred in holding that the entire Act (as opposed to portions or applications of the Act) violates the Commerce Clause, and in refusing to apply an express severance provision set forth in the Act.*[2]

---

[2]    Defendants also moved to dismiss on other grounds, asserting preemption by the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and a violation of the Takings Clause, U.S. Const. amend. V. The district court did not reach these issues, ruling

(*footnote continued on next page*)

## STATEMENT OF THE CASE

On October 18, 2011, plaintiffs, on behalf of themselves and classes of similarly situated artists and their estates, separately sued Sotheby's, Christie's and eBay, seeking damages under the Act and equitable relief under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (*See* 7 EOR 001799 - 8 EOR 00834 [complaints].) The suits were deemed related and all assigned to the same district court judge. (8 EOR 001848 [entry for 10/25/2011], 001859 [entry for 10/27/2011].)

On January 12, 2012, defendants moved to dismiss the complaints, arguing, *inter alia*, that the Act violates the Commerce Clause and therefore that the complaints failed to state a claim under Fed. R. Civ. P. 12(b)(6). (7 EOR 001670-734 [Sotheby's and Christie's joint motion], 001766-96 [eBay's motion].)[3]

On February 6, 2012, plaintiffs opposed the motions, arguing, among other things, that the Act did not violate the Commerce Clause. (3 EOR 000446-503 [opposition to Sotheby's/Christie's joint motion], 000518-48 [opposition to eBay's

---

only that the Act violates the Commerce Clause. (1 EOR 000009:6-10.) Accordingly, the alternative grounds urged in the motions are not ripe for review. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

[3] Sotheby's and Christie's filed a joint motion, while eBay filed separately. (7 EOR 001670-734 [Sotheby's and Christie's motion], 001766-96 [eBay motion].)

motion].) The opposition papers cited authority that, in the event the district court found the allegations of the complaint deficient, leave to amend should be granted. (3 EOR 000503 n.30, 000528 n.4.)

On February 10 and 14, 2012, with the time for Fed. R. Civ. P. 26 disclosures and the date for the Rule 26(f) conference approaching, defendants moved the district court to stay all discovery obligations pending a ruling on their motions to dismiss. (3 EOR 000390-412 [Sotheby's/Christie's joint motion], 000413-21 [eBay's motion].) Plaintiffs opposed the motions on February 21, 2012. (2 EOR 000326-60 [opposition to Sotheby's/Christie's joint motion], 000362-88 [opposition to eBay's motion].)

On March 12, 2012, the district court heard the motions to dismiss, but issued no ruling. (2 EOR 000181-82.) On March 28, 2012, plaintiffs sought leave to take discovery and file supplemental briefs regarding the motions to dismiss. (2 EOR 000121-37.) On March 28, 2012, the district court granted defendants' motions to stay discovery and denied plaintiffs' requests as moot. (7 EOR 000030-31.)

On May 17, 2012, the district court granted the motions to dismiss on the ground that the Act violates the Commerce Clause; it held the entire Act was unconstitutional. (1 EOR 000007-25, 000026-27.) The district court did not rule

on any of the other grounds raised in the motions to dismiss. (1 EOR 000009:6-10.)

On June 6, 2012, judgments were entered in favor of all defendants. (1 EOR 000001-6.) Plaintiffs timely noticed appeals from each judgment the next day. (1 EOR 000032-120.)

## STATEMENT OF FACTS

### A.    **The Act.**

The dismissed complaints are based on the Act, California Civil Code section 986. Insofar as is here pertinent, the Act provides as follows:

- The Act applies to the sale of works of "fine art," defined as "an original painting, sculpture, or drawing, or an original work of glass." Cal. Civ. Code § 986(c)(2).

- The Act applies only to the sale of a work of fine art that takes place in California or that is sold by a seller who resides in California. Cal. Civ. Code § 986(a).

- When a work of fine art is sold in California or by a seller who resides in California, the seller or the seller's agent must pay to the artist 5% of the amount of such sale. *Id.*

- When a work of fine art is sold at auction, or by a gallery, dealer, broker, museum or other person acting as the seller's agent, the agent

must withhold 5% of the amount of the sale and locate and pay the

artist. Cal. Civ. Code § 986(a)(1). If the artist cannot be located

within 90 days, the 5% must be paid to the California Arts Council.

*Id.*

- If the seller or the seller's agent fails to pay the 5%, the artist may

  bring an action for damages. Cal. Civ. Code § 986(a)(3).

- The Act provides for severance "[i]f any provision . . . or the

  application thereof to any person or circumstance is held invalid for

  any reason," in which case "such invalidity shall not affect any other

  provisions or applications of this section which can be effected,

  without the invalid provision or application . . . ." Cal. Civ. Code

  § 986(e).

The Act was enacted as part of California's police powers. It is an

"economic regulation to promote artistic endeavors generally." *Morseburg v.*

*Baylon*, 621 F.2d 972, 979 (9th Cir. 1980). "[L]ife in California is enriched by

art," Cal. Gov't Code § 8750; hence, the Act advances, among other goals,

happiness, prosperity and the common good.

**B.** **The Pertinent Allegations of the Complaints.**

    **1.** **The Actual Allegations of the Complaints.**

Plaintiffs are classes of California and non-California artists and the estates of deceased artists whose works of fine art were sold by California sellers or in transactions taking place in California. The defendants are auction houses and sellers' agents doing business in and having a presence in California, and which sold the works on behalf of the sellers. (7 EOR 001800:17-22, 001801:7-18; 8 EOR 001813:18-26, 001814:10-21, 001825:17-25, 001826:7-17, 001830:16-18.)

Plaintiffs sue because defendants, as seller's agents, breached the Act's requirement that they withhold 5% from the sales proceeds of the sales they conducted in California and/or on behalf of California sellers and pay such amounts to the artists whose original works of fine art were sold. (7 EOR 001801:19-02:4; 8 EOR 001814:22-15:7, 001826:18-27:2.)

Plaintiffs filed separate class action complaints, on October 18, 2011, against defendants Sotheby's, Christie's and eBay. (7 EOR 001799 - 8 EOR 001834.) Insofar as is here pertinent, the complaints allege as follows:

- All defendants regularly conduct business in and have a presence in California.

- Two of the defendants (Sotheby's and Christies), while incorporated and headquartered in New York, "regularly conduct[] business in

California" and have a "presence" in the County of Los Angeles. (7 EOR 001800:23-25, 001801:5-7; 8 EOR 001814:1-3, 001814:8-9.) The third defendant (eBay) is a Delaware corporation that has its principal place of business in San Jose, California, and an additional presence in Los Angeles County. (8 EOR 001825:26-28.)

- Through auctions conducted during the pertinent class periods, defendants each sold and acted as the sellers' agents in selling works of fine art as defined in the Act. (7 EOR 001801:13-18; 8 EOR 001814:16-21, 001826:13-17.)

- Defendants have obligations under the Act because, as sellers' agents, they sold, works of fine art on behalf of California sellers and in sales that took place in California. (*Id.*)

- Defendants violated their obligations under the Act because they never withheld from the sales amounts – or paid to the artists whose work of fine art were sold – the 5% amount required by the Act on sales transactions occurring in California and on sales by California sellers. (7 EOR 001801:17-02:4; 8 EOR 001814:22-15:7, 001826:18-27:2.)

- By reason of their violations of the Act, defendants are liable for damages. (7 EOR 001807:6-11; 8 EOR 001820:38, 001831:1-6.)

- Because defendants' violations of the Act constitute unfair competition, plaintiffs are also entitled to restitution, injunctive and declaratory relief under California's Unfair Competition Law, California Business & Professions Code section 17200 *et seq.* (7 EOR 001807-09; 8 EOR 001820-22, 001831-33.)

    **2.**    **If Necessary, the Complaints Could Readily Be Amended to Allege That Each Defendant Maintains An Extensive California Presence and Does Substantial Business in California.**

If warranted, plaintiffs can readily amend their complaints to allege that defendants have a more extensive presence in California than alleged in the complaints.[4] For example, the complaints could be amended to allege that Sotheby's has offices dealing in art in San Francisco, Los Angeles and Santa Barbara (*see, e.g.*, http://www.sothebys.com/en/inside/locations-worldwide.html; http://www.sothebys.com/en/inside/locations-worldwide/san-francisco/ overview.html; http://www.sothebys.com/en/inside/locations-worldwide/santa-

---

[4] "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

barbara/overview.html; http://www.sothebys.com/en/inside/locations-worldwide/los-angeles/overview.html); that Christie's has salesrooms in San Francisco and Beverly Hills (*see, e.g.*, http://www.christies.com/about/locations/); and that eBay has headquarters at two San Jose locations (*see, e.g.*, http://www.ebayinc.com/contact; 7 EOR 001756).

Moreover, the complaints could easily be amended to allege that each defendant is registered to do business in California. (*See* http://kepler.sos.ca.gov/ (California Secretary of State website, showing Christie's registered to do business in California as Christie's Fine Art Auctioneers, and both Sotheby's and eBay registered with the California Secretary of State).)

Finally, as detailed in footnote 5, the complaints could readily be amended to allege that each defendant solicits business in California to act as agent for the sale and auction of fine art in California and on behalf of California sellers.[5]

---

[5]    See, e.g., http://www.sothebys.com/en/inside/locations-worldwide/san-francisco/overview.html ("With the help of Sotheby's international experts in all areas of fine and decorative art, jewellery [*sic*], wine, books and collectibles, we are able to assist you if you have questions regarding buying or selling, or wish to have an object from your collection valued."), http://www.sothebys.com/en/inside/locations-worldwide/los-angeles/overview.html (same), http://www.christies.com/about/locations (touting salesrooms in two locations in California), http://pages.ebay.com/sellerinformation/howtosell/sellingbasics.html (touting ease of selling items on eBay, including:  "Learn how to sell in just 4 simple steps: list, sell, ship, and get paid.").

## C.     The District Court's Ruling Dismissing the Complaints.

On defendants' motions, the district court dismissed plaintiffs' complaints, holding that the Act violates the Commerce Clause.  The dismissal was based on a facial reading of the complaint, the district court stating that "[w]hether the statute will survive Defendants' constitutional challenge is not dependent, in any way, on information that may be produced in discovery."  (1 EOR 000031.)

Having granted the motions based solely on the Commerce Clause, the district court did not pass on any of the other grounds raised in the motion.  (1 EOR 000009:6-10.)

In a written opinion supporting its holding that the Act violates the Commerce Clause, the district court stated that the Act "explicitly regulates applicable sales of fine art occurring wholly outside California."  (1 EOR 000019:15-16.)  The court offered the following hypothetical example:

> Assume a California resident places a painting by a New
>
> York artist up for auction at Sotheby's in New York, and
>
> at the auction a New York resident purchases the painting
>
> for $1,000,000.  In such a situation, the transaction that
>
> the CRRA [the Act] regulates – the one between the New
>
> York auction house and the New York purchaser –
>
> occurs wholly in New York.  Despite the fact that even

the artist receiving the royalty is a New York resident,

the CRRA reaches out to New York and regulates the

transaction by mandating that Sotheby's (1) withhold

$50,000 (i.e., 5% of the auction sale price); (2) locate the

artist; and (3) remit the $50,000 to the New York artist.

Cal. Civ. Code § 986(a)(1). Should Sotheby's in New

York fail to comply, the New York artist may bring a

legal action under California law (the CRRA) to recover

the applicable royalty. Cal. Civ. Code § 986(a)(3). If the

artist cannot be located, Sotheby's must send the money

withheld in the transaction to the California Arts Council.

*Id.*

(1 EOR 000019:23-20:13 (footnote omitted).)

Refusing to apply the Act's express severance provision, the district court

held that the entire Act, rather than just portions or applications of the Act, should

be invalidated because it found that the California Legislature would not have

passed the Act if it could not lawfully be applied to non-California sales of art by

California sellers. (1 EOR 000024:20-25.) In refusing to apply the severance

provision, the district court interpreted the legislative history of the Act – of which

it took judicial notice (*see* 1 EOR 000020 n.6) – to "reveal[] that the legislature

abandoned the initial version of the [Act] that purported to regulate *only* sales that took place *in* California."  (1 EOR 000023:16-19.)

## SUMMARY OF ARGUMENT

In these consolidated appeals, plaintiffs will argue and establish as follows:

<u>First</u>, we will demonstrate that the Act does not violate the Commerce Clause for two separate and independent reasons:

- The Act satisfies the "bright line" Commerce Clause test established by the Supreme Court in *Quill Corporation v. North Dakota*, 504 U.S. 298 (1992) and comports fully with Supreme Court cases like *National Geographic Society v. California Board of Equalizatio*n, 420 U.S. 551 (1977).  These cases and others hold that a state (like California) can lawfully require an out-of-state merchant to collect and thereafter pay a levy due under California law so long as the merchant has a presence in California.  (*See* discussion in Section I.A below.)

- The Act satisfies the four-prong Commerce Clause test established by the Supreme Court in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977), in that the Act imposes a levy "applied to an activity with a substantial nexus to the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to

15

the services provided by the State." (*See* discussion in Section I.B below.)

Second, we will show that none of the reasons advanced, nor any of the authorities relied on, by the district court supports its decision holding the Act violates the Commerce Clause. (*See* discussion in Section II below.)

Third, we will demonstrate that, even if (contrary to our arguments) the Act is deemed to have somehow violated the Commerce Clause in some respects, it does not violate the Commerce Clause in other respects; that the Act's severance provision expressly compelled the district court to uphold all lawful applications of the Act; and that the district court prejudicially erred in refusing to honor the Act's severance directive. (*See* discussion in Section III below.)

For these reasons, each explained in detail below, the judgments should be reversed with directions to the district court to issue an order denying the motions to dismiss insofar as they are premised on asserted violations of the Commerce Clause. At a bare minimum, in the event some applications of the Act are found to violate the Commerce Clause while other applications do not, the reversal should be accompanied with directions that the district court deny the motions to dismiss insofar as they are directed at those portions of the Act whose application does not violate the Commerce Clause.

## STANDARD OF REVIEW

Because the district court's dismissal ruling was based solely on the pleadings, the governing standard of review is *de novo*. *California First Amendment Coalition v. Calderon*, 150 F.3d 976, 980 (9th Cir. 1998) ("[A] district court's ruling on the constitutionality of a state statute is reviewed de novo"); *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008) ("[t]he decisions of a district court on motions to dismiss are reviewed de novo").

In determining whether the dismissal is lawful, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *South Ferry LP*, 542 F.3d at 782 ("We must accept as true all well-pleaded allegations in the complaint."). The Court must draw all reasonable inferences in favor of the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

And, a dismissal order should not be affirmed on appeal if it is apparent that a complaint could be amended to cure any deficiency in the pleading. *Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.").

# ARGUMENT

## I. THE ACT IS CONSTITUTIONAL: IT COMPORTS FULLY WITH THE COMMERCE CLAUSE BECAUSE IT SEPARATELY AND INDEPENDENTLY SATISFIES TWO COMMERCE CLAUSE TESTS PROMULGATED BY THE SUPREME COURT.

There are two separate and independent reasons why the Act does not violate the Commerce Clause. First, it satisfies the "bright-line" test established by the Supreme Court in *Quill*, 504 U.S. 298, as well as the rules set forth in multiple Supreme Court cases leading to the "bright-line" rule. Second, it satisfies the four-part test established by the Supreme Court in *Complete Auto*, 430 U.S. 274.

Satisfaction of either of these grounds compels reversal of the district court's ruling. Here, both are satisfied, as we now demonstrate.

### A. The Act Is Constitutional Under the Commerce Clause: It Passes the Supreme Court's "Bright-Line" Test That a State May Constitutionally Impose a Levy-Collection Burden on an Out-Of-State Seller So Long as the Seller Has a Physical Presence in or Nexus to the State Imposing the Levy.

#### 1. The Bright-Line Rule.

In *Quill*, 504 U.S. 298, the Supreme Court held there should be a "bright-line" rule for determining whether the Commerce Clause is offended where a state

18

requires out-of-state merchants to collect levies (like use taxes) owed under state law on transactions occurring outside the levy-imposing state.[6]

Under *Quill*, all that is needed for a state to impose such a duty on an out-of-state merchant, consistent with the Commerce Clause, is that the out-of-state merchant have a "physical presence" in the state imposing the levy. *Quill*, 504 U.S. at 314-15. As *Quill* put it, "[w]hether or not a State may compel a vendor to collect a sales or use tax may turn on the presence in the taxing State of a small sales force, plant or office." *Id.* at 315. The court concluded that, while there are certain downsides in promulgating a "bright-line" test, doing so in such circumstances "firmly establishes the boundaries of legitimate state authority" allowing the state to require out-of-state merchants to fulfill the obligation. *Id.* at 315-18.[7]

---

[6]  *Quill* and other cases discussed below address the "'negative' or 'dormant' Commerce Clause" which "prohibits discrimination against interstate commerce and bars state regulations that unduly burden interstate commerce." *Quill*, 504 U.S. at 309, 312 (citations omitted).

[7]  In *Quill*, North Dakota sued Quill Corporation, a Delaware corporation conducting a mail-order business, for failure to pay and collect use taxes due on goods sold by Quill to North Dakota consumers. Quill had no physical presence in North Dakota, having no outlets there, no employees there, and no significant tangible property there. *Quill*, 504 U.S. at 301-302. Since Quill had no physical presence in North Dakota, the Supreme Court reversed the North Dakota Supreme Court's decision upholding imposition of the levy-collection obligation. *Id.* In so

*(footnote continued on next page)*

As demonstrated by *Quill* and amplified by the cases we discuss below, the "bright-line" rule enunciated in *Quill* draws the following boundary: If an out-of-state merchant has no physical presence in the state imposing the levy-collection obligation, the state cannot require the merchant to collect and pay the levy; however, if the merchant has a physical presence in the levy-imposing state (or employs persons in the state), then there is no Commerce Clause barrier in requiring the merchant to fulfill the levy-collection and payment obligation.

As we demonstrate below, the facts alleged (and that could be further alleged upon amendment of the complaint) conclusively satisfy the "bright-line" test. It is not even a close call.

## 2. The Supreme Court Cases That Led to (and Define the Boundaries of) *Quill's* "Bright-Line" Rule.

Between 1934 and 1977, the Supreme Court decided *Monamotor Oil v. Johnson*, 292 U.S. 86 (1934); *Felt & Tarrant Mfg. Co. v. Gallagher*, 306 U.S. 62 (1938); *Nelson v. Sears, Roebuck & Co.*, 312 U.S. 359 (1941); *Scripto, Inc. v. Carson*, 362 U.S. 207 (1960); *National Bellas Hess, Inc. v. Illinois Rev. Dept.*, 386

---

holding, the Supreme Court pronounced the "bright-line" test referred to in the text.

20

U.S. 753 (1967), *overruled on other grounds by Quill*, 504 U.S. at 308; and

*National Geographic Society*, 430 U.S. 551.

These cases culminated in *Quill*'s proclamation that there should be a

"bright-line" rule in this area and they help explain why the Act is constitutional

under that rule. We will now briefly discuss each of these cases.

<blockquote>

a. **The Most Recent Pre-*Quill* Case: *National***

***Geographic.***

</blockquote>

In *National Geographic*, California required a District of Columbia

corporation doing mail-order business with California residents to collect and pay

California use taxes due on mail-order sales it made to California customers.

Although National Geographic maintained two offices in California, neither of

those offices engaged in the mail-order business that triggered the imposition of

use taxes; the mail-order business was conducted solely by mail out of National

Geographic's D.C. offices. *National Geographic*, 420 U.S. at 552-53. National

Geographic contended the California law violated the Commerce Clause. *Id.* at

554. The Supreme Court disagreed. *Id.* at 559, 561-62.

The Supreme Court held it is permissible under the Commerce Clause for

California to impose a levy-collection obligation on National Geographic because

National Geographic had a nexus or presence in California: National Geographic's

"maintenance of the two offices in California and activities there adequately

establish a relationship or 'nexus' between the Society and the State that renders constitutional the obligations imposed . . . ." *National Geographic*, 420 U.S. at 556.

According to the Court, the governing test for determining whether the "nexus" is sufficient to pass Commerce Clause scrutiny is "simply whether the facts demonstrate 'some definite link, some minimum connection'" between the taxing state and the person it asks to collect the tax. *National Geographic*, 420 U.S. at 561. The Court held: "We conclude that the Society's continuous presence in California in offices that solicit advertising for its magazine [even though the magazine business had nothing to do with the mail-order business] provides a sufficient nexus to justify that State's imposition upon the Society of the duty to act as collector of the use tax [on the mail-order business]." *Id.* at 562.

### b. The Other Pre-*Quill* Cases.

Prior to *National Geographic* and *Quill*, the Supreme Court addressed the same issue in multiple cases, each consistently applying the same rules.

**The *Monamotor* case.** In this case, an Arizona corporation, engaged in distributing gasoline products and maintaining service stations in Iowa, challenged on Commerce Clause grounds an Iowa statute that imposed a fee for using gasoline in Iowa and required distributors to collect and transmit Iowa use taxes to Iowa. *Monamotor*, 292 U.S. at 93. The Supreme Court held that commerce was not

unduly burdened by requiring the distributors to collect the tax on Iowa's behalf. *Id.* at 93-94.

The *Felt* case. In this case, California required an Illinois corporation to collect a tax on sales it made to California and to "insure payment of such tax if it fails to make collections from the tax debtors." *Felt*, 306 U.S. at 66. Although all sales were accepted in and sent from non-California facilities, the corporation engaged two agents in California who worked on commission. *Id.* at 64-65. The Supreme Court rejected the corporation's Commerce Clause challenge, relying heavily on *Monamotor* and holding that requiring the Illinois corporation to collect the tax on behalf of California "'imposes no unconstitutional burden either upon interstate commerce or upon the appellant.'" *Id.* at 67-68 (quoting *Monamotor*, 292 U.S. at 95).

The *Nelson* case. In Nelson, Sears Roebuck (a national retailer and mail-order company incorporated in New York) operated several stores in Iowa. *Nelson*, 312 U.S. at 588. Sears refused to collect sales tax that Iowa required it to collect on mail orders it shipped from out of state to Iowa consumers. Rejecting Sears' argument that the tax collecting requirement violated the Commerce Clause, the Supreme Court held it is not unconstitutional to impose such a burden on a foreign corporation having a presence in the state imposing the levy-collection obligation. *Id.* at 364. Specifically, in upholding Iowa's right to impose the

collection burden on Sears, the Supreme Court rejected Sears' contention that it should escape the burden because, unlike in *Monamotor* and *Felt*, its presence in Iowa did not relate to the mail orders that triggered the tax. *Nelson*, 312 U.S. at 364.

The Supreme Court justified imposition of the tax-collection burden because Sears was doing business in Iowa (albeit unrelated to the mail-order sales that triggered the tax) and, as a result, was "receiving benefits from Iowa for which it [Iowa] has the power to exact a price." *Id.* at 365.

The *Scripto* case. In this case, a Georgia corporation, having no office, no place of business, no property and no regular full-time employees in Florida, was required by Georgia law to collect Florida use taxes on sales it shipped from its Georgia plant to Florida consumers. *Scripto*, 362 U.S. at 207-09. The Supreme Court rejected the corporation's Commerce Clause challenge because the corporation had ten part-time employees working in Florida. *Id.* at 621-22. The Court held: "The test is simply the nature and extent of the activities of the appellant [the Georgia corporation] in Florida." *Id.* at 622.

The *Bellas Hess* case. In this case, a Missouri seller operating a national mail-order business that delivered merchandise by mail or common carrier to Illinois customers argued the imposition of a tax-collection obligation violated the Commerce Clause. Unlike in the cases discussed above, the Missouri seller had no

tangible property in Illinois, nor Illinois sales outlets, nor Illinois representatives or solicitors. *Bellas Hess*, 386 U.S. at 754. The Supreme Court held the tax-collection burden could not be placed on the Missouri corporation because there is a "sharp distinction . . . between mail order sellers with retail outlets, solicitors, or property within [the taxing] State , and those [like Bellas Hess] who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business." *Id.* at 758.

* * * * *

The law is quite clear: So long as a merchant has some physical presence – "'some definite link, some minimum connection,'" as *National Geographic* put it, 430 U.S. at 561 – in the state imposing the levy-collecting obligation, the obligation does not violate the Commerce Clause; it satisfies the "bright-line" test.

As we now demonstrate, the "bright-line" test is unquestionably satisfied in this case. In our case, the nexus and presence between each of the defendants and California are not minimal, they are extensive.

### 3. The Act Unquestionably Passes Commerce Clause Scrutiny.

The "bright-line" test established by *Quill* and informed by each of the cases just discussed holds that, if an out-of-state merchant has a minimal presence in a state (like California), that merchant can be required to collect and pay a levy due under state law, without violation of the Commerce Clause.

25

The test is satisfied here. It is satisfied not merely because the complaint alleges facts sufficient to satisfy the test; it is also satisfied because the complaint can easily be amended to allege additional facts showing much greater presence than presently alleged.

The allegations of the complaints, standing alone, suffice to establish the required nexus or presence. Plaintiffs allege that the defendants regularly conduct business in California and have a presence in California; that they act as agents in connection with sales that take place in California and on behalf of California sellers vending fine art in other states; and that eBay has its corporate headquarters in California. These allegations alone easily suffice to satisfy *Quill's* "bright-line" test and, thus, they conclusively establish that the Act does not violate the Commerce Clause.

But, if more is needed, the complaints can easily be amended to charge that that defendants Sotheby's and Christie's have multiple offices specifically dealing with art transactions in California, that all defendants are registered to do business in California and that all defendants actively solicit business from Californians. (*See* discussion above at pp. 11-12.)

Clearly, the allegations of the complaints, as presently pleaded or as they could be amended to plead, suffice to pass the "bright-line" test determinative of whether the Commerce Clause is violated in cases like ours. It is not even a close

question. The district court's contrary decision violates the principles announced above. The judgments must be reversed so that this case can proceed without further Commerce Clause challenge.

Since the *Quill* test is satisfied in this case, this Court need not read further in order to determine that the judgments must be reversed. But, if the Court wants more, there is more. The facts alleged also satisfy the four-part test enunciated in *Complete Auto*, 430 U.S. 274, 279, as we now demonstrate.

**B.** **The Act Is Independently Constitutional Under the Four-Part Commerce Clause Test Promulgated by the Supreme Court in *Complete Auto*.**

A financial burden imposed by one state on a transaction that occurs in another state – such as a use tax, a tax on an interstate telephone call, or, as here, a levy on an art sale – is constitutionally permissible if, in its "practical effect," it satisfies the following four-part test: "the tax is applied to an activity with a substantial nexus to the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Complete Auto*, 430 U.S. at 279.

As we now demonstrate, each of these elements is satisfied here.

1. **The 5% Charge Imposed by the Act Applies to an Activity with a Substantial Nexus to California.**

The first *Complete Auto* element, requiring a "substantial nexus" to California, is unquestionably established for all the reasons just discussed in Section I.A above.

Other factors further establish why the Act applies only where there is a close California nexus. Consider, for example, the following:

- In order for the 5% levy to be assessed, the sale must be by a California resident or must occur in California. Civ. Code § 986(a).

- On auction sales by California sellers outside of California, the burden of the 5% levy falls directly on the California seller, not on the defendant auction house, as the Act requires the auction house to "withhold 5 percent of the amount of the sale" from the California seller's share of the sales proceeds. Cal. Civ. Code § 986(a)(1). In short, if the defendant auction house does what California law requires, it has zero liability under the Act – the entire cost of the levy falling exclusively on the California seller.

- The Act's requirement that the auction house "withhold" the 5% from the seller's share of proceeds in order to escape liability is exactly the type of provision that the Supreme Court has held permissible under

the Commerce Clause. *See, e.g.*, *National Geographic*, 430 U.S. at 558 ("The out-of-state seller becomes liable for the tax only by failing or refusing to collect the tax from the resident consumer. Thus, the sole burden imposed upon the out-of-state seller is the administrative one of collecting it."); *Scripto*, 362 U.S. at 211 (the seller is "charged with no tax – save when, as here, he fails or refuses to collect it from the Florida customer"). In fact, the Supreme Court not only approves of levies for which the out-of-state merchant has no liability if it follows the state law, but it disapproves of Commerce Clause challenges based on the merchant's failure to do so. *Nelson*, 312 U.S. at 365 ("[R]espondent is in no position to found a constitutional right on the practical opportunities for tax avoidance which its method of doing business affords Iowa residents, or to claim constitutional immunity because it may elect to deliver the goods before the tax is paid.").

- The only way defendants can be held liable under the Act for auction transactions occurring outside of California is if they act as "agents" for California sellers. Cal. Civ. Code § 986(a), (a)(1), (a)(3) (all referring to "agents"). And, of course, it is the law that auction houses act as agents for the persons whose works they are selling. *See, e.g.*,

*Veazie v. Williams*, 49 U.S. 134, 152 (1850) ("That an auctioneer is a general agent for the owner usually . . . cannot be doubtful."); *In re Cal Farm Supply Co.*, 110 B.R. 461, 466 (Bankr. E.D. Cal. 1989) ("An auctioneer is primarily the agent of the person in whose behalf the sale is conducted and is exclusively such until the property is sold to the highest bidder").

- The Act's requirement that liability requires an agency relationship between the California seller and the auction house ties all out-of-state transactions directly to the California sellers. This is so because, under California law, the acts of an agent are conducted on behalf of the principal and, thus, are deemed to be the equivalent of acts by the principal himself – it is as though the California seller were himself or herself conducting the sale. Cal. Civ. Code §§ 2330 (agent represents principal for all purposes within the scope of authority and all rights and liabilities which would accrue to agent from transaction within scope of authority accrue to principal), 2362(1) (auctioneer has authority from the seller to sell by public auction to the highest bidder); *Korean Air Lines Co., Ltd. v. County of Los Angeles*, 162

Cal.App.4th 552, 562 (2008) (under California law, "[a]n agent acts on behalf of the principal").[8]

For these reasons, as well as those set forth in Section I.A above, the Act's application depends on the existence of multiple and close ties between California and defendants. Those ties are alleged to exist here. Defendants' ties to California are not merely "substantial." They are overwhelming.

## 2. The Act Is Fairly Apportioned.

The second part of the *Complete Auto* test asks whether a levy is "fairly apportioned." This serves to "ensure that each State taxes only its fair share of an interstate transaction." *Goldberg v. Sweet*, 488 U.S. 252, 261 (1989). To determine whether a tax is fairly apportioned, two questions must be answered: Is the tax internally consistent and is it externally consistent. *Id.* California's levy satisfies both components.

---

[8] The same is true under New York law and under general agency principles. *Maurillo v. Park Slope U-Haul*, 194 A.D.2d 142, 146 (N.Y. App. Div. 1993) (under New York law, "[t]he agent is a party who acts on behalf of the principal with the latter's express, implied, or apparent authority"); Restatement (Third) Of Agency § 1.01 (2006) (in agency relationship, "the agent shall act on the principal's behalf and subject to the principal's control"); *see Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 931 (9th Cir. 2011) (holding that district court could exercise personal jurisdiction over German company based on its agency relationship with United States subsidiary).

### a. The Levy Imposed By the Act Is Internally Consistent.

"To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg*, 488 U.S. at 261. The purpose of the test is to assess whether "a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax." *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 185 (1995). The internal consistency requirement is satisfied "when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear." *Id.*

The Act satisfies this test. California is not attempting to take more than its "fair share" in this case. Although California is currently the only state that imposes a levy on the sale of fine art, there is no risk that, if all states were enact legislation identical to the Act, a seller would be required to pay multiple levies when selling art.

The reason is simple. If all states required payment of 5% to the artist, each state's 5% requirement would be satisfied with a <u>single</u> payment of 5% – in short, the artist would receive 5% of the sale proceeds, just as each state intended.[9]

For this reason, the Act passes the internal-consistency test. It creates no risk of dual or multiple taxation, even if every state in the nation were to copy it.

### b. The Levy Imposed By The Act is Externally Consistent.

"The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Goldberg*, 488 U.S. at 262. Thus unlike the internal consistency test, external consistency "looks not to the logical consequences of cloning, but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." *Oklahoma Tax Comm'n*, 514 U.S. at 185.

This test is satisfied here because the Act imposes a 5% levy only on transactions occurring in California or on transactions where the seller is a

---

[9]   If any state in this hypothetical imposed a percentage greater than 5%, say 10% for example, there would still be no duplication, as a single 5% payment would still satisfy all but the additional amount imposed by the 10% state.

California resident. Thus, using *Goldberg*'s terms, the levy impacts "only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." Here, the Act's requirements are fulfilled because <u>all</u> out-of-state activity is directly tied to a California nexus:

- As to out-of-state transactions conducted by auction houses, like defendants, the Act requires that the 5% must be withheld from the <u>California seller's</u> share of the proceeds. The intent is clear that it is the California seller who must bear the tax and that the auctioneer is liable only if it does not withhold as the Act directs.

- The defendant auctioneer is not directly liable under the Act unless it fails to honor the Act's requirement that it withhold 5% from the California seller's share of the proceeds. *E.g.*, *National Geographic*, 430 U.S. at 558 ("The out-of-state seller becomes liable for the tax only by failing or refusing to collect the tax from the resident consumer. Thus, the sole burden imposed upon the out-of-state seller is the administrative one of collecting it."); *Scripto*, 362 U.S. at 211 (the seller is "charged with no tax – save when, as here, he fails or refuses to collect it from the Florida customer").

- To be bound by the Act's obligations, the defendant auctioneer must be the California seller's "agent," which means that all acts conducted

by the defendant auctioneer are the legal equivalent acts by the California seller – it is as though the California seller himself or herself were personally conducting the sale out of state.

For these reasons, the Act is both internally and externally consistent. Thus, the fair-apportionment component of the *Complete Auto* test is fully satisfied.

### 3. The Act Does Not Discriminate Against Interstate Commerce.

In the context of a dormant Commerce Clause analysis, "'"discrimination" simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *United Haulers Ass'n , Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 388 (2007) ("*United Haulers*"). The Act does not discriminate in favor of California interests.

In fact, the Act does the opposite: It burdens only in-state interests and, thus, gives out-of-state interests an advantage. As we have shown, the Act's sole burdens are on <u>California</u> transactions and <u>California</u> sellers; and, as we have shown, the sellers' agents conducting non-California auctions can escape the levy completely by simply following the law and "withhold[ing] 5 percent" from the California resident's share of the sales proceeds. Cal. Civ. Code § 986(a)(1).

The Act is also not discriminatory because it applies evenhandedly, at a minimum, to all who choose to sell art in California, to all California residents who

choose to sell art out of state, and to all persons who opt to act as agents for the California sellers and have a nexus or presence in California.

The Act has no bearing on those who do not sell art in California or who are not willing to serve as the agent of a California art seller; and it has no financial impact on any agent that does what the Act asks – namely, deduct the 5% from the California seller's share of sales proceeds.

Referencing the example employed by the district court in its order, if a California seller and a New York seller were separately to sell fine art at auctions in New York for the same price, the California seller would receive 5% less in proceeds than the New York seller. Placing such a burden on a California resident is permissible. As *Goldberg* observed, "It is not the purpose of the Commerce Clause to protect state residents from their own state taxes." *Goldberg*, 488 U.S. at 266; *see United Haulers*, 550 U.S. at 345 (where state law favored public entities over private ones, "[t]here is no reason to step in and hand local businesses a victory they could not obtain through the political process").

Here, California sellers may resort to the political process to change the Act, but it is not this Court's duty to protect them from California's imposition of a 5% charge.

**4.**     **The Act Is Fairly Related to the Services Provided by the State.**

The Act also satisfies the last prong of the *Complete Auto* test, which examines whether the financial burden is related to services provided by the state. *Complete Auto*, 430 U.S. at 279.

"The fair relation prong of *Complete Auto* requires no detailed accounting of the services provided to the taxpayer on account of the activity being taxed, nor, indeed, is a State limited to offsetting the public costs created by the taxes activity. If the event is taxable, the proceeds from the tax may ordinarily be used for purposes unrelated to the taxable event." *Oklahoma Tax Comm'n*, 514 U.S. at 199.

Here, the Act's purpose is to support artists whose work is resold by California sellers or through art sales concluded in California. The obligation falls on California transactions and California sellers selling fine art out of state. The defendants who act as agents for California sellers by selling their fine art at auction out of state can, as we have shown, escape any liability for the 5% charge by simply withholding it from the sellers' proceeds.

And, because the defendants have substantial presences in California, with each maintaining multiple offices in California, and with eBay also having its corporate headquarters in California, defendants derive substantial benefits as recipients of the protections and services that California affords. The Supreme

Court has recognized the availability and furnishing of these benefits are factors in evaluating the Commerce Clause implications of a levy-collection obligation on out-of-state merchants that have a California nexus or presence. *See, e.g., National Geographic*, 430 U.S. at 561 (noting that National Geographic received advantages by having California offices, including fire and police protection); *Nelson*, 312 U.S. at 365 (when a state furnishes benefits to an out-of-state corporation doing business in the state, the state "has the power to exact a price"); *Bellas Hess*, 386 U.S. at 757 (noting that in situations upholding liability of out-of-state seller to collect local tax, out-of-state seller was "plainly accorded the services of the taxing state"); *Quill*, 504 U.S. at 306 (favorably quoting *Bellas Hess*), 307 (referencing that foreign corporation purposefully avails itself of "benefits of an economic market" in the state), 308 (imposing levy-collection obligation relates to the benefits out-of-state corporation "receives from access to the state").

* * * * *

For all the reasons stated above, the Act does not violate the Commerce Clause. The Act separately and independently passes Commerce Clause scrutiny under the "bright-line" test promulgated by *Quill*, and under the four-part test established in *Complete Auto*. The district court's ruling that the Act violates the Commerce Clause must be reversed.

## II. NONE OF THE REASONS ADVANCED BY THE DISTRICT COURT SUPPORTS ITS DETERMINATION THAT THE ACT VIOLATES THE COMMERCE CLAUSE.

The district court held that the Act is unconstitutional because it found that the Act "explicitly regulates applicable sales of fine art occurring wholly outside California." (1 EOR 000019:15-16.) The district court's rationale does not withstand scrutiny for all the reasons expressed in Section I above and for the additional reasons we now discuss.

### A. Contrary to the District Court's Determination, the Act Does Not Directly Regulate Commerce Occurring Wholly Outside California.

The district court held that the Act is invalid *per se* because it "explicitly regulates applicable sales of fine art occurring wholly outside California." (1 EOR 000019:14-15 (emphasis added).) This is wrong for multiple reasons.

First, the district court's conclusion is refuted by the Act itself. Far from applying solely to transactions occurring "wholly outside" of California, the Act expressly applies to instances in which the "sale takes place in California." Cal. Civ. Code § 986(a).

Second, for sales that do not take place in California, the Act applies only if the "seller resides in California." Cal. Civ. Code § 986(a). And, in many cases, shipment of the sold art will emanate from California.

Third, in order for a defendant auction house to be held liable, it must act as "agent" for the California seller and, thus, all its acts are legally attributable to the California seller. See discussion above in Section I.B.1.[10]

---

[10] Application of the Act to defendants here who elect to act as agents for California sellers is not unlike application of San Francisco's nondiscrimination ordinance to contractors who elected to contract with that city in *S.D. Myers, Inc. v. City and County of San Francisco*, 253 F.3d 461 (9th Cir. 2001). The ordinance there required a contractor to provide equivalent employee benefits with respect to registered domestic partners as it provides to spouses, even where the employee worked on San Francisco contracts outside of California. *Id.* at 465. In finding the ordinance did not violate the Commerce Clause notwithstanding its extraterritorial impacts, this Court gave particular weight to the fact that the contractor "has affirmatively chosen to subject itself to the Ordinance by contracting with the City." *Id.* at 469. Here, as in *S.D. Myers*, the defendants affirmatively chose to subject themselves to California's regulation of California transactions and sales by California residents.

Also on point is *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1224 (9th Cir. 2003), in which this Court held that the Commerce Clause does not prevent a Danish company from being bound by California's regulation of contracts, where the Danish company contracted with a California company and part of the contract was to be performed in California. Especially applicable to eBay is that the contract in *Gravquick* had a California choice-of-law provision. *Id.* Here, eBay concedes that its contracts with its sellers, whether or not California residents, are governed by California law. (7 EOR 001755 ("This Agreement shall be governed in all respects by the laws of the State of California as they apply to agreements entered into and to be performed entirely within California between California residents . . . .").)

Fourth, as both *Scripto* and *National Geographic* have observed (*see* discussion above at p. 29), if defendants do what the Act requires, the economic impact of the 5% levy will fall solely on the California seller.  Cal. Civ. Code § 986(a)(1); 7 EOR 001705:14-15 (admission by Sotheby's and Christie's that they hold sale proceeds "in trust for their principals, the owners of the artworks").

Fifth, in order for the Act to apply to an out-of-state auction house, the auction house must have a presence in California, as *Quill* and the other cases discussed in Section I.A above establish.  In the instant case, the California presence of each defendant is substantial.  See discussion, *supra,* in Section I.A.3 and at pp. 9-10.

For these reasons, the district court's stated premise that the Act is *per se* invalid because it applies to transactions occurring "wholly outside" of California is unfounded.  The Act's exclusive focus and economic impact is on California transactions, California sellers, and persons acting as agents for California sellers.

## B. The District Court's Reliance on *Healy* and *Brown-Forman* Is Misplaced.

For the reasons just set forth, the district court's reliance on *Healy v. Beer Inst.*, 491 U.S. 324 (1989) and *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573 (1986) is misplaced.  (*See* 1 EOR 000018-19.)  These cases preclude a state from "directly control[ling] commerce occurring wholly

outside the boundaries of a State . . . ." *Healy*, 491 U.S. at 336; *Brown-Forman*, 476 U.S. at 582.

Neither case precludes a state from enacting a law that has an effect on a business transaction occurring elsewhere. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 133 (1978) ("[I]f an adverse effect on competition were, in and of itself, enough to render a state statute invalid, the States' power to engage in economic regulation would be effectively destroyed."); *National Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1151 (9th Cir. 2012) ("Countless non-discriminatory regulations affect the ability of some out-of-state entities to compete, but that does not necessarily mean that those regulations impose a significant burden on interstate commerce").

What *Healy* and *Brown-Forman* do preclude is a state law that has the "practical effect" of "control[ling] conduct beyond the boundaries of the State." *Healy*, 491 U.S. at 336; *Brown-Forman*, 476 U.S. at 583. The Act does not do that, as the discussion in Section II.A above confirms, and as the Supreme Court authorities discussed in Section I.A above establish.

Here, the Act applies only to transactions that occur in California or to sales by California residents conducted through their agents; far from controlling conduct beyond its boundaries, the Act primarily impacts intra-California affairs, with only incidental effect outside of California's borders.

Unlike in *Healy* and *Brown-Forman*, where state liquor laws had the effect

of controlling liquor prices in other states,[11] the Act has zero effect on the prices

charged for art in other states. In auctions, the bidders will bid the price up to the

level the bidders deem appropriate and the art will sell to the highest bidder,

regardless of where the sale takes place. The ultimate purchase price will not

change because of the 5% levy; rather, the sole impact of the charge if the

auctioneer "withholds" as the Act requires is that the California seller will receive

5% less. The effect of the Act is identical to a state imposing a sales tax on

transactions conducted in the state or imposing a use tax on out-of-state purchases

transacted by its residents. The agent can escape any liability by doing what the

Act directs – deducting the royalty from the seller's share of the proceeds.

---

[11]  In *Brown-Forman*, the New York law held to be invalid required a distiller to
affirm that the prices the distiller posted on a required schedule were no higher
than the lowest price charged for the same item anywhere in the United States and
further required the distiller to seek approval from New York before changing its
price in New York or elsewhere. 476 U.S. at 575-576, 582 n.5, 583. The law was
held invalid because its "practical effect" was "to control liquor prices in other
States," essentially "[f]orcing a merchant to seek regulatory approval in one State
before undertaking a transaction in another." *Id*. at 582-583.

*Healy* involved a similar state price affirmation statute, one that required "out-
of-state shippers to forgo the implementation of competitive-pricing schemes in
out-of-state markets" and, thus, deprived "business and consumers in other States
of 'whatever competitive advantages they may possess' based on the conditions of
the local market." 491 U.S. at 339 (quoting *Brown-Forman*, 476 U.S. at 580). The
statute was held unconstitutional because it "had an impermissible extraterritorial
effect" and precluded pricing based on local market factors. 491 U.S. at 334, 337.

**C.**     **The Hypothetical Posed by the District Court Is Inapposite:  It**

        **Fails to Account for the Facts of This Case**.

In holding that the Commerce Clause was violated, the district court prominently employed the following hypothetical example:  When a California resident sells a painting to a New Yorker at an auction in New York, the transaction is entirely "between the New York auction house and the New York purchaser" and thus "occurs wholly in New York."  (1 EOR 000019-20.)  This ignores the facts of this case:

- It ignores that the auction house is not the seller, but merely the agent for the seller.

- It ignores that the auction house, as agent of the California seller, acts on behalf of the California seller.

- It ignores that the 5% charge is required to be deducted from the seller's share of the proceeds and, thus, has no economic impact on the New York auction house so long as the auction house honors its obligations under the Act.

- It ignores that the defendant auction houses in our case have substantial presences and do major business in California and, thus, are lawfully subject to the "withholding" obligations imposed by the Act.

- It is inconsistent with the authorities (discussed in Section I.A above) that hold there is no violation of the Commerce Clause if an out-state-seller with a presence in California is required by California law to collect and pay the levy.

In short, the district court's hypothetical fails to consider what matters when it comes to the correct application of the Commerce Clause to the facts alleged in this case.

## D. The Act Does Not Violate the Commerce Clause Because, If Its Requirements Are Honored, Its Economic Impact Falls Exclusively on California Transactions and California Residents.

As shown, the Act applies solely to art sales that either take place in California or that involve a California seller. In those cases, and only in those cases, the California seller must pay the 5% which must be deducted from the proceeds of the sale.

Neither the Supreme Court nor this Court (nor any court of which we are aware) has ever held (nor even remotely suggested) that a state cannot lawfully impose levies on transactions occurring solely within its own boundaries or on the transactions of its own residents.

There is no such case because, at its core, the Commerce Clause seeks to prevent economic protectionism by a state, i.e., discrimination against out-of-state

commerce, or economic balkanization among the states. *See, e.g., Healy,* 491 U.S. at 335-36 (discussing Commerce Clause's broad concern "with the maintenance of a national economic union unfettered by state-imposed limitations on interstate commerce"); *National Ass'n of Optometrists & Opticians v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009) ("[T]he dormant Commerce Clause promotes a national market and the free flow of commerce between the states by preventing them from adopting economic protectionist policies").

The Commerce Clause has nothing to do with a state imposing economic obligations on sales transactions occurring within its borders or engaged in by its residents; nor is its purpose transgressed when it requires merchants having a presence in the state from helping the state assure that its residents fulfill their obligations as residents. (*See* discussion in Section I.A above).

This case is analogous to *Valley Bank of Nevada v. Plus System, Inc.*, 914 F.2d 1186 (9th Cir. 1990). In *Valley Bank*, this Court held that a Nevada law allowing a bank to charge a fee when a customer withdraws cash from an account at another bank (even one outside of Nevada) is valid notwithstanding a contention that the law dictated terms of a transaction outside of Nevada. This Court held that the fees at issue come ultimately from the <u>customer's</u> bank account; the out-of-state bank's role, like that of the auction houses here, is purely administrative: It

"simply disburses funds" as a result of the customer's ATM transaction. *Id.* at 1191.

While the Act affects the amount of profits yielded by transactions occurring in California and profits received by a California seller from an out-of-state auction, the Act has no effect on the free flow of interstate commerce. *See Valley Bank*, 914 F.2d at 1192 ("[T]he commerce clause does not give an interstate business the right to conduct its business in what it considers the most efficient manner; the Constitution 'protects the interstate market, not particular interstate firms.'" (quoting *Exxon Corp.*, 437 U.S. at 127).)

For these reasons, the purposes of the Commerce Clause are neither implicated nor violated by the Act.

## III. THE DISTRICT COURT ERRED WHEN IT INVALIDATED THE ACT *IN TOTO*; THE DISTRICT COURT WAS OBLIGED TO ENFORCE THE ACT'S SEVERANCE PROVISION.

As demonstrated above, the Act passes Commerce Clause scrutiny and should be upheld in its entirety: It passes both the *Quill* and *Complete Auto* tests and, thus, is constitutional under either or both. The judgments must therefore be reversed in their entirety.

But, even if a portion of the Act presented some Commerce Clause infirmity (contrary to the authorities we have cited), the Act should not have been

47

invalidated in its entirety, but only as to the portion or application of the Act that transgresses the Commerce Clause. The reason why this is so is clear: The district court found no fault (and there is no conceivable constitutional fault) in those portions of the Act that apply solely to sales taking place in California, and the Act contains a severance provision that compels severance, providing:

> If any provision of this section or the application thereof
>
> to any person or circumstance is held invalid for any
>
> reason, such invalidity shall not affect any other
>
> provisions or applications of this section which can be
>
> effected, without the invalid provision or application, and
>
> to this end the provisions of this section are severable.

Cal. Civ. Code § 986(e).

Even though the district court found no constitutional fault in the portions of the Act that apply solely to intra-California sales,[12] it held the entire Act is unconstitutional. The district court was required to honor the severance provision; its refusal to do so was prejudicially erroneous.

---

[12]  Defendants did not argue that application of the Act to intra-California sales violates the Commerce Clause.

**A.     The Portions of the Act That Apply to Sales Occurring Within California Do Not Violate the Commerce Clause.**

States may, without violating the Commerce Clause, tax intrastate transactions that do not directly burden interstate commerce. *See Ford Motor Co. v. Beauchamp*, 308 U.S. 331, 334-35 (1939) (state may tax foreign or domestic corporations for the opportunity to transact intrastate business); *Pacific Tel. & Tel. Co. v. Tax Commission*, 297 U.S. 403, 418-19 (1936) (upholding tax on intrastate transactions that "is not shown to be a burden on interstate commerce").

Nothing in the district court opinion found any constitutional fault with the portions of the Act applying solely to intra-California transactions. The district court should not have invalidated these portions of the Act, as we now demonstrate.

**B.     The Act's Severance Provision Unequivocally Expresses Legislative Intent That Lawful Portions of the Act Must Be Upheld and, Thus, It Mandates That the Portions of the Act That Do Not Violate the Law Be Upheld.**

Here, in addition to alleging violations pertaining to out-of-state transactions, plaintiffs also allege that defendants' violations of the Act include failures to withhold 5% of the proceeds from sales occurring entirely in California. (7 EOR 001806:19-26; 8 EOR 001819:18-25, 001830:16-23.)  Since the district

court found no constitutional fault with exacting a levy on intra-California transactions, the Act's severance provision required that these sections of the Act be upheld.

The severance provision mandates that, if any provision or application of the Act is held invalid, "such invalidity shall not affect any other provisions or applications of this section which can be effected, without the invalid provision or application, and to this end the provisions of this section are severable." Cal. Civ. Code § 986(e).

Not only do the express terms of the severance provision mandate that there be severance in this case, there can be virtually no doubt that the Legislature specifically intended that it be applied in a case exactly like ours. This is demonstrated by the legislative history leading to adoption of the Act. (*See* 1 EOR 000020 n.6 [district court taking judicial notice of legislative history].) As the district court's opinion observed, at one point during the enactment process, a Deputy Legislative Counsel had expressed concern that the legislation might infringe the Commerce Clause insofar as it applied to sales occurring outside of California. (1 EOR 000024:8-13; *see* 4 EOR 000585-591 [letter from Deputy Legislative Counsel re August 16, 1976 version of bill].) Prior to this expression of constitutional concern, the proposed legislation contained no severance provision. (*See* 4 EOR 000562-63 [April 2, 1975 version of bill], 000580-83

[August 2, 1976 version of bill].)  After the Deputy Legislative Counsel's expression of constitutional concern, however, the existing severance provision was added to the legislation.  (4 EOR 000596:16-21 [severance provision as added to August 31, 1976 version of bill], 000603 [September 14, 1976 letter from Deputy Legislative Counsel noting addition of severance provision].)  Given this history, there can be no doubt that the addition of the severance provision was intended to insure that all lawful provisions and applications of the Act remain in effect, even if its extraterritorial application were held to violate the Commerce Clause.

Here, both the express terms of the severance provision and the legislative history leading to inclusion of the provision in the Act mandate that all constitutional applications of the Act be preserved.  The district court's refusal to sever, as directed by the Act, was prejudicial error.

**C.**      **The District Court's Holding Is Inconsistent with Supreme Court Precedents Mandating That a Statute's Severance Provision Must Be Honored.**

The district court refused to enforce the Act's severance provision because it concluded, based on its review of legislative history, that the California Legislature would not have enacted the Act if it did not have extraterritorial reach.  (1 EOR 000024:20-21.)  This was serious error.

There was no need for the district court to delve into legislative history to ascertain legislative intent where, as here, the legislation itself clearly expressed the Legislature's intent. It directed that there be severance. Period.

Had the Legislature really intended (as the district court believed) that the Act would never have been enacted without the provisions applicable to out-of-state transactions, the Legislature could easily have said this, but it did not. The last thing the Legislature would have done was to direct severance when, in fact, it did not mean it. Here, there was no need to dig into legislative history to speculate as to legislative intent when that intent appeared expressly in the statute.

That this is so is established by controlling Supreme Court precedents: *Immigration and Naturalization Serv. v. Chadha*, 462 U.S. 919 (1983) and *Champlin Refining Co. v. Corporation Comm'n*, 286 U.S. 210 (1932).

In *Chadha*, the Supreme Court, addressing statutory severance language substantively identical to that set forth in the Act, directed that there must be severance. It held that there was no need for the court to speculate whether Congress would (or would not) have enacted the provision without the offending language because Congress itself provided the answer: "Here, however, we need not embark on that elusive inquiry since Congress itself has provided the answer to the question of severability" in the section that mandated there be severance. 462 U.S. at 932. The Court examined the severability language and declared:

>This language is unambiguous and gives rise to a
>presumption that Congress did not intend the validity of
>the Act as a whole, or any part of the Act, to depend upon
>whether [the statutory language in question] was invalid.

*Id.*

The same rule was pronounced in *Champlin Refining*. There, the Court held that a severance provision "discloses an intention to make the act divisible and creates a presumption that, eliminating invalid parts, the Legislature would have been satisfied with what remained, and that the scheme of regulation derivable from the other provisions have been enacted without regard to [the offending provision]." 286 U.S. at 235.

These cases demonstrate conclusively that the district court prejudicially erred in invalidating the entire Act when the severability provision of the Act mandated severance. The district court's order should be reversed with directions that all constitutional portions and applications of the Act, including specifically the portions of the statute applicable to transactions occurring in California, be given effect.

D.    **The Cases Relied on by the District Court Are Inapposite:  They Do Not Support the Order Invalidating the Entire Act.**

Citing *Regan v. Time, Inc.,* 468 U.S. 641, 652 (1984), the district court recognized that "a court should refrain from invalidating more of [a] statute than is necessary." (1 EOR 000023:1-3.)  The district court violated this directive.

In refusing to apply the Act's severance provision, the district court relied on two cases, *Alaska Airlines v. Brock*, 480 U.S. 678, 685 (1987) and *National Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633 (9th Cir. 1993).  Neither case supports the district court's holding.  The cases are inapposite because the legislation involved in those cased did <u>not</u> contain a severance provision.  In decisive contrast, the Act in our case does contain such a provision.

Indeed, in the very case relied on by the district court, namely, *Alaska Airlines*, 480 U.S. at 686, Supreme Court declared that the inquiry is completely different when a statute contains a severance provision.  In such circumstance, there is a "presumption" that the "the objectionable provision can be excised from the remainder of the statute." *Id.*

The district court's reliance on *Miller* is equally inapposite, not merely because the statute in *Miller* contained no severance provision, but also because no severance issue was even presented in that case.  *Miller* did not need to address any severance issue because all provisions of the legislation were found to be

unconstitutional: "Thus, our inquiry into the possibility of severance must end almost before it begins because no provision of the Statute can be characterized as 'unobjectionable.'" *Miller*, 10 F.3d at 640. Here, the district court did not express a finding of any constitutional infirmity in the portions of the Act that apply to sales occurring in California.

**E.** **In Addition to Being Contrary to Law, the District Court's Refusal to Give Effect to the Severance Provision Makes No Sense.**

In addition to the district court's reliance on inapposite cases (i.e., cases where the legislation had no severance provision) and its failure to follow controlling cases (i.e., those where the legislation contained a severance provision), the rationale employed by the district court makes no sense.

Rather than concluding (as Supreme Court authority compels) that the severance provision was itself a decisive expression of legislative intent, the district court opted to delve into legislative history to speculate as to an intent that required no speculation given the clear expression of intent set forth in the Act itself. It made absolutely no sense to delve into legislative history when legislative intent was unequivocally expressed in the Act.

Aside from the impropriety of the district court's improper exploration into legislative history, the conclusion the district court drew from its exploration defies

reason. The district court concluded that because the legislative history contained earlier versions of the bill applying solely to transactions occurring in California, while the enacted version of the Act applied to out-of-state transactions as well as to intra-California transactions, "the California legislature 'would not have enacted' the [Act] without its extraterritorial reach." (1 EOR 000023:16-24:6, 000024:20-21.) This conclusion is untenable because it is inconsistent with one of the reasons the district court advanced in support of its decision to refuse severance.

Specifically, the district court, in refusing to sever, observed that the Legislative Counsel had expressed concern that that the Act might infringe the Commerce Clause to the extent it applied to sales occurring outside of California. (1 EOR 000024:8-13.) Far from supporting the district court's decision, the fact that the Legislative Counsel had voiced Commerce Clause concern as to one application of the Act affords compelling reason why the severance provision should have been honored. That the Legislature, knowing of this expression of constitutional concern as to the extraterritorial application of the Act, decided to include a severance provision provides decisive support to the conclusion that the Legislature intended severance – that it intended that all lawful applications of the Act would survive even if other applications foundered. The wording of the severance provision – that what should be severed if found invalid includes not

only "any provision" but also "the application thereof to any person or circumstance," Cal. Civ. Code § 986(e) (emphasis added) – can lead to no other conclusion.

For these reasons, the district court's decision refusing to sever is untenable. Even were some portion of the Act deemed unconstitutional, the judgments must still be reversed with directions compelling the district court to apply the Act's severance provision upholding those application of the Act (i.e., to transactions occurring solely in California) that do not violate the Commerce Clause.

## IV.    CONCLUSION.

For all the foregoing reasons, plaintiffs respectfully request that the judgment in each of the cases be reversed. The reversal should be accompanied by directions requiring the district court to deny the motions to dismiss insofar as they are based on asserted violations of the Commerce Clause. In the alternative, in the event (contrary to the showing made in this brief) this Court determines that any

application of the Act does violate the Commerce Clause, the judgments should be reversed with directions that the motions to dismiss be denied as to all applications of the Act that do not transgress the Commerce Clause.


DATED: February 28, 2013  Respectfully submitted,

          BROWNE GEORGE ROSS LLP
            Eric M. George
              egeorge@bgrfirm.com
            Ira Bibbero
              ibibbero@bgrfirm.com

          GREINES, MARTIN, STEIN
           & RICHLAND LLP
            Irving H. Greines
              igreines@gmsr.com
            Gary D. Rowe
              growe@gmsr.com


          By  /s/ Eric M. George
              Eric M. George

          Attorneys for Plaintiffs/Appellants

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,243 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Standard 2010 in 14-point Times New Roman.

DATED:  February 28, 2013          Respectfully submitted,

BROWNE GEORGE ROSS LLP
    Eric M. George
      egeorge@bgrfirm.com
    Ira Bibbero
      ibibbero@bgrfirm.com

GREINES, MARTIN, STEIN
& RICHLAND LLP
    Irving H. Greines
      igreines@gmsr.com
    Gary D. Rowe
      growe@gmsr.com

By          /s/ Eric M. George
_____
      Eric M. George
Attorneys for Plaintiffs/Appellants

## STATEMENT OF RELATED CASES

Appellants are aware of no related cases to disclose pursuant to Ninth Circuit Rule 28-2.6. All cases that may otherwise be deemed related are the subject of this consolidated appeal.


DATED: February 28, 2013  Respectfully submitted,

        BROWNE GEORGE ROSS LLP
         Eric M. George
          egeorge@bgrfirm.com
         Ira Bibbero
          ibibbero@bgrfirm.com

        GREINES, MARTIN, STEIN
         & RICHLAND LLP
         Irving H. Greines
          igreines@gmsr.com
         Gary D. Rowe
          growe@gmsr.com


        By   /s/ Eric M. George
           Eric M. George
        Attorneys for Plaintiffs/Appellants